# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| REVEREND CHARLES R. JACKSON, on behalf of himself and all others similarly situated, | * * * * | Case No. |
| Plaintiffs, | * * | |
| v. | * * | |
| NEWPORT GROUP, INC.; SYMETRA FINANCIAL CORPORATION, REVEREND DR. JEROME V. HARRIS, AFRICAN METHODIST EPISCOPAL CHURCH, AMEC FINANCIAL SERVICES, INC., dba AMEC DEPARTMENT OF RETIREMENT SERVICES, JOHN DOES 1 – 10, AND XYZ CORPORATIONS 1 – 10 | * * * * * * * * * | JURY DEMAND |
| Defendants. | * | |

## CLASS ACTION COMPLAINT

Plaintiff Reverend Charles R. Jackson, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Newport Group, Inc., Symetra Financial Corporation, Rev. Dr. Jerome V. Harris, and African Methodist Episcopal Church, a not-for-profit 501(c)(3) corporation ("AMEC"), and AMEC Financial Services, Inc. dba AMEC Department of Retirement Services ("AMEC Retirement Services") and alleges the following:

### INTRODUCTION

This suit arises out of Defendants' breach of their obligations to Plaintiffs and other wrongful conduct in managing the pension fund administered by AMEC Retirement Services (the "Fund"). Plaintiffs seek recovery on behalf of a class of AMEC ministers and

other employees who, collectively, have lost millions of dollars due to Defendants' misconduct and mismanagement of the Fund.

1. Plaintiff and the members of the class (collectively, "Plaintiffs") are ministers and other employees of AMEC who have lost retirement funds that were invested in the Fund.

2. Defendants mandated that the ministers invest a portion of their salary into the Fund, a Fund which Defendants promised was conservative and would preserve their principal.

3. Defendants also offered the opportunity to invest additional amounts into the Fund as consideration for and recognition of Plaintiffs' hard work and dedication as AMEC employees and/or ministers to AMEC's church members.

4. Defendants owed a duty to Plaintiffs to fairly, diligently and properly oversee and audit the Fund.

5. Defendants' failure to do so led to the loss of tens of millions of dollars of retirement funds Plaintiffs earned from their countless hours in service to AMEC's church members and to the AMEC organization as a whole.

6. Defendants' breach of this sacred trust has caused heartbreaking and devastating stress and hardship to Plaintiffs who spent years ministering to AMEC's flock.

**PARTIES**

7. Plaintiff Reverend Charles R. Jackson is a resident of Orlando, Orange County, Florida. Rev. Jackson served as an AMEC minister from 1997 until his retirement in September 2021. On September 29, 2021, and shortly after

his retirement, Reverend Jackson mailed a written request to release his funds held by the Fund, followed by multiple phone calls, and the Fund ultimately denied his request.

8. Defendant Newport Group, Inc. is a Florida corporation with its headquarters in Walnut Creek, California.

9. Defendant Symetra Financial Corporation was incorporated, and is existing, under the laws of the state of Delaware. It maintains its headquarters in Bellevue, Washington.

10. Defendant Rev. Dr. Jerome V. Harris served as the Executive Director of the AMEC Department of Retirement Services until 2021.

11. Defendant AMEC was incorporated, and is existing, under the laws of the state of Pennsylvania as a not-for-profit 501(c)(3) corporation. AMEC's principal place of business and its headquarters are in Nashville, Tennessee.

12. Defendant AMEC Financial Services, Inc. dba AMEC Department of Retirement Services is, upon information and belief, a for-profit corporation registered under the laws of the State of Tennessee with its principal place of business and headquarters in Memphis, Tennessee.

13. Defendants John Does 1-10 and XYZ Corporations 1 - 10 are affiliates or subsidiaries of Defendants here responsible for the conduct alleged herein whose identities and addresses have not been discovered despite Plaintiff's best reasonable efforts to do so.

**JURISDICTION AND VENUE**

14. Jurisdiction of this Court is invoked pursuant to 28 USC § 1331.

15. Jurisdiction of this Court is also invoked pursuant to 28 USC § 1332(d) as, upon information and belief, members of the proposed Class are disbursed throughout the United States and are citizens of different States than the citizenship of Defendants, and the amount in controversy exceeds $5,000,000.

16. This Court may exercise personal jurisdiction over Defendants because Defendants conduct substantial business in this State and have engaged in the unlawful practices set forth in this Complaint in this District.

17. Venue is proper in the Western District of Tennessee under 28 U.S.C. 1391 because Defendants reside in this District and the facts giving rise to this cause of action occurred in this District.

## FACTUAL ALLEGATIONS

### I. History of the AMEC

18. The African Methodist Episcopal ("AME") denomination grew out of the Free African Society, which was established in Philadelphia in 1787.

19. In 1794, the first AMEC was dedicated in Bethel, Pennsylvania, and Richard Allen (a founding member of the Free African Society) was made pastor and later elected and ordained its first bishop in 1816.

20. Because Black Methodists encountered racism and sought religious autonomy, Allen successfully sued in the Pennsylvania courts in 1807 and 1815 for the right of his congregation to exist as an independent institution.

21. Because other Black Methodists in middle Atlantic communities encountered racism and desired religious autonomy, Allen called them to meet in Philadelphia to form a new Wesleyan denomination, the AME.

22. Prior to the Civil War, the geographical spread of the AMEC was mostly in the Northeast and Midwest, with major congregations established in Philadelphia, New York, Boston, Pittsburgh, Baltimore, Washington, DC, Cincinnati, Chicago, Detroit, and other large Blacksmith's Shop cities.

23. During the Civil War and Reconstruction, AMEC membership boomed as AME clergy moved into the states of the collapsing Confederacy. By 1880, membership reached 400,000 because of AME's rapid spread below the Mason-Dixon line and spread throughout the West in the twentieth century.

24. AMEC presently has membership in 20 Episcopal Districts in 39 countries on 5 continents. The work of the Church is administered by 21 active bishops and nine General Offices who manage the departments of the Church.

25. The AMEC, today, is among the largest Protestant denominations in the United States boasting about 2.5 million members in 2011, the last year on record with the National Council of Churches.

## II. The AMEC Department of Retirement Services

26. On December 1, 1964, AMEC established the Fund, originally named the African Methodist Episcopal Church Ministerial Retirement Annuity Plan.

27. Since then, the Fund has undergone various name changes including the Department of Employee Security, and the Department of Annuity, Investments and Insurance, until adopting its current name in June 2013 as the Department of Retirement Services.

28. All ordained ministers receiving an Episcopal pastoral appointment to a local

church are required to comply with existing Church law and be officially enrolled in and contribute a portion of their salary to the Fund with a minimum contribution of $312 reported at each Annual Conference and Mid-Year Convocation.

29. There are currently approximately 6000 participants in the Fund.

30. Defendant Harris first became Director of the Fund in 2000 and held the post until his retirement on July 9, 2021 at the AEC 51st Quadrennial Session of the General Conference AMEC.

31. As of the 2017 Fiscal Year, the Fund reported a retirement plan portfolio of $119,800,961.03 with fiscal year 2017 retirement contributions of $7,857.031.46 and distributions of $8,231,138.85.

32. Defendants assured Plaintiffs that the contributions to the Fund were being invested in very conservative investments that would ensure preservation of principal.

33. AMEC states that the value of the Fund increased from $47.5 million to approximately $125 million during Defendant Harris's tenure as the Fund's Executive Director.

34. Defendants issued quarterly statements to Plaintiff and other Class members about the balance of their respective accounts in the Fund.

35. These quarterly statements sent to Plaintiff and other Class members included the logo for all four named Defendants, to wit, Newport Group, Inc., Symetra Financial Corporation, AMEC, and AMEC Retirement Services.

36. Upon information and belief, Defendants knew or should have known these pronouncements were false.

37. The current Executive Director of the Department of Retirement Services is Rev. Dr. James F. Miller, who assumed this post after Defendant Harris's retirement.

38. Dr. Miller discovered the Fund shortfall shortly after he assumed leadership of the Fund in the Summer of 2021.

39. On October 7, 2021, AMEC stated in a Facebook post that the Fund "has reported a material loss in the value of one or more of its departmental investments." AMEC added that a comprehensive audit by an independent law firm and accounting firm was "underway." It was not made clear whether prior independent audits had ever been conducted and, if not, why not.

40. The AMEC has declined to say how much money is missing from the Fund, but in a mid-January, 2022 church governing-body meeting, the AMEC discussed borrowing $45 million or selling church property to replace at least some of the missing money.

41. Upon information and belief, Plaintiffs and members of the AMEC community believe the losses are even larger and exceed sixty percent of the Fund.

42. Plaintiff and other Class Members have learned that the money they spent years to save is gone.

43. Defendants' shocking wrongdoing and mismanagement has caused untold financial, mental, and physical hardship.

44. Many Class members—including Plaintiff Reverend Jackson---are retired and have suddenly learned that resources they relied on to support themselves, to depend on in times of bad health, and to simply enjoy during retirement, have been stolen from them by people they trusted.

## SPECIFIC ALLEGATIONS

45. The Fund was making disbursements to plan participants until the Summer of 2021. Reverend Jackson received a form letter from the Fund addressed to all plan participants dated September 14, 2021, notifying him that disbursements would be temporarily paused while the Fund was audited due to a change in leadership.

46. Reverend Jackson is over seventy years old and had planned to rely on these funds after dutifully paying into the Fund as Defendants required during his twenty plus years as an AMEC minister.

47. On September 29, 2021, and shortly after his retirement, Reverend Jackson mailed a written request to release his funds held by the Fund, and the Fund denied his request.

48. The letter indicated that this audit would take 4-6 weeks.

49. AMEC has wrongfully denied ministers like Rev. Jackson access to their retirement funds.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) seeking injunctive and monetary relief for Defendants' misconduct, as alleged herein.

A. **Class Definition**

51. Plaintiffs bring this class action on their own behalf and on behalf of a putative Class defined as follows:

> All persons residing in the United States who are or were ministers or other employees of the AMEC and who have contributions in the Fund and/or are due disbursements which the Fund has refused to pay during the Relevant Time Period.

52. The Relevant Time Period is January 1, 2021 through the present.

53. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses under Rule 23(c)(5), or modified in any other way.

54. Plaintiff Reverend Jackson is a member of the Class he seeks to represent.

55. Defendants' misconduct is continuing in nature.

### B. Rule 23(a) and Rule 23(h)(3) Requirements

#### a. Numerosity

56. The proposed Class is so numerous that joinder of all members is impracticable.

57. Upon information and belief, there are thousands of members of the proposed Class, who are geographically located throughout the United States.

58. The identification of Class members is ascertainable through Defendants' maintained records.

#### b. Commonality

59. There are questions of fact and law common to the class, which common questions predominate over any questions affecting only individual members. Those common questions include:

    a. Whether the Defendants breached their contract with Plaintiff

and other Class members;

b. Whether the Defendants breached their fiduciary duties to Plaintiff and other Class members;

c. Whether the Defendants were negligent in failing to perform adequate due diligence in relation to the Fund;

d. Whether the Defendants converted Plaintiffs' funds;

e. Whether Defendants' were unjustly enriched;

f. Whether Plaintiff and other Class members detrimentally relied on Defendants' promises;

g. Whether Plaintiff and other Class members suffered emotional distress to due to outrageous intentional or reckless conduct by Defendants;

h. Whether Plaintiff and other Class members sustained damage as a result of Defendants misconduct alleged herein;

i. The proper measure of damages to which the Plaintiffs are entitled; and

j. Whether the Plaintiffs are entitled to accounting of the Fund.

### c. Typicality

60. All Class members were subject to the same misconduct as alleged herein, and their injuries and claims arise out of the same wrongdoing.

### d. Adequacy of Representation

61. Plaintiff can and will fairly and adequately represent and protect the interests of the class and has no interests that conflict with or are antagonistic to the interests of the class.

Plaintiffs have retained attorneys who are experienced and competent in class action litigation. No conflict exists between Plaintiff and class members because:

　　a.　All of the questions of law and fact regarding liability of Defendants are common to the class and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiff Reverend Jackson necessarily will establish Defendants' liability to all class members;

　　b.　Plaintiff Reverend Jackson and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff Reverend Jackson's counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class; and

　　c.　All class members have the same legal rights to, and interests in, the fair treatment by Defendants, and payment of the proportionate and respective monies to which they are entitled from the Fund.

**e. Predominance and Superiority**

62.　The class is an appropriate method for the fair and efficient adjudication of the controversy given the following:

　　a.　Common questions of law and/or fact predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a classwide instead of repetitive individual basis;

11

      b.      Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members;

      c.      The economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation; and

      d.      No unusual difficulties are likely to be encountered in the management of this class action in that all questions of law or fact to be litigated at the liability stage are common to the class.

63. Class certification is fair and efficient because prosecution of separate actions would create a risk of adjudications with respect to individual members of the class, which may be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

64. Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class.

**f. Injunctive Relief**

65. Plaintiffs also seek injunctive relief to prevent Defendants from engaging in the conduct that has led to Plaintiffs' losses which are likely continuing in nature.

## CLAIMS FOR RELIEF

### COUNT I

### (Breach of Contract)

66. The preceding allegations of the Complaint are restated and realleged as if fully set forth herein.

67. Plaintiff along with the Class members and Defendants had an agreement reduced to one or more writings in the control of Defendants mandating that Plaintiffs participate in the Fund in return for Defendants proper and prudent management of the Funds to ensure a reasonable rate of return and reasonable preservation of principal to be paid out to Plaintiff and other Class members at circumscribed times or events, including but not limited to a Plaintiff's retirement.

68. Plaintiff and other Class members performed under the contract by dutifully making payments into the Fund.

69. Defendants breached and failed to perform under this agreement by failing to properly manage and maintain the Plaintiff and other Class members' fund payments, all as set forth above.

70. Plaintiff and other Class members have been damaged by Defendants' breach of the contract created by the Fund and as set forth above.

### COUNT II

### (Breach of Fiduciary Duty)

71. The preceding allegations of the Complaint are restated and realleged as if fully set forth herein.

72. The Defendants had substantial discretion and control over Plaintiff's

and other Class members' retirement funds (including the investment of such funds).

73. The Defendants held a superior position over Plaintiff and other Class members regarding their management and control over Plaintiff's and other Class members retirement funds.

74. The Defendants owed Plaintiff and other Class members a fiduciary duty and duty of care and were required to act with proper and fiduciary care over these funds.

75. Plaintiff and other Class members consequently trusted that Defendants would exercise proper and due care over their funds and in their interactions and communications with Plaintiff and other Class members, consistent with fiduciary duties owed to them.

76. The Defendants breached their fiduciary duties to Plaintiff and other Class members by failing to adequately manage the Fund and ensure their funds were available for withdrawal as promised.

77. Plaintiff and other Class members have been damaged as a proximate result of Defendants' breaches of fiduciary duty and are entitled to damages.

## COUNT III

### (Negligence)

78. The preceding allegations of the Complaint are restated and realleged as if fully set forth herein.

79. The Defendants had a special relationship with Plaintiff and other Class members that gave rise to a duty to exercise due care in their relationship and management of their assets invested in the Fund.

80. The Defendants knew or should have known that Plaintiff and other Class members were relying on the Defendants to use reasonable care to manage the money contributed to the Fund by Plaintiff and other Class members.

81. The Defendants failed to exercise reasonable care as set forth in detail in this Complaint as Plaintiff and other Class members reasonably expected of Defendants given Defendants' representations, experience, and position.

82. The Defendants also failed to act reasonably with respect to monitoring the Fund and its investments.

83. As a direct and proximate, and foreseeable result of Defendants' negligence, Plaintiff and other Class members have been damaged by a loss of value in the Fund arising from Defendants' negligence and other wrongful acts and omissions.

84. Defendants are jointly and severally liable to Plaintiff and other Class members.

## COUNT IV

### (Conversion)

85. Plaintiffs restate and reallege the preceding allegations of the Complaint as if fully restated herein.

86. Plaintiff and other Class members had an ownership and other possessory rights to their respective portions of the Fund based on the amounts they contributed to the Fund and rates of return that the Fund assured Plaintiff and Class Members they had and were enjoying.

87. Defendants converted a portion of Plaintiff and Class members' funds

inconsistent with the latter's property rights in the Fund.

88. Plaintiff and other Class members have been damaged as a proximate and direct result of Defendants' conversion of Plaintiff and other Class members' respective contributions to the Fund with reasonable rates of return which they would have enjoyed.

### COUNT V

### (Unjust Enrichment)

89. Plaintiffs restate and reallege the preceding allegations of the Complaint as if fully restated herein.

90. Plaintiff and other Class members conferred a benefit on Defendants by making contributions to the Fund, as Defendants were aware.

91. Defendants have retained these funds under circumstances where it would be unjust to retain this benefit without payment to Plaintiff and Class members.

### COUNT VI

### (Promissory Estoppel)

92. Plaintiffs restate and reallege the preceding allegations of the Complaint as if fully restated herein.

93. Defendants clearly and unambiguously promised Plaintiff and other Class members that they would receive a return on their investment if they continued to invest monies into the Fund.

94. These promises were made through, among other things, statements showing consistent, quarterly increases in value to the Fund.

95. Plaintiff and other Class members reasonably and foreseeably relied on these promises to their detriment.

## COUNT VII

### (Tort of Outrage)

96. Plaintiffs restate and reallege the preceding allegations of the Complaint as if fully restated herein.

97. As set forth herein, Defendants herein intentionally lied and misled the Plaintiff and Class members concerning their intended use of contributions to the Fund and the value of Plaintiff and Class members' respective accounts and of the Fund as a whole. Defendants lied and misled the Plaintiff and other Class members with the intent that they would continue to contribute to the Fund.

98. Defendants made these lies and misrepresentations for the sole purpose of their own financial benefit knowing full well that the Plaintiffs and others would lose their investments, be left penniless and as a result suffer severe emotional distress.

99. The Defendants knew the truth that the Fund did not have the value contained within the lies and misrepresentations being told to the Plaintiff and other Class members and knew that, in truth, the information they gave was false.

100. Defendants knew that by giving this false advice it would result in Plaintiff and other Class members to continue contributing to the Fund even as the Fund value was dropping dramatically for all Plan participants, thus causing the severe emotional distress set forth hereinabove.

101. The conduct of these Defendants was either intentional or reckless, that is they intended their behavior when they knew or should have known that severe emotional distress

would likely result to the Plaintiff and other Class members from the behavior set forth hereinabove. The conduct of these Defendants was outrageous, that is, it went beyond all bounds of decency so as to be regarded as odious and utterly intolerable in a civilized community; the conduct of these Defendants as set forth hereinabove caused the emotional distress described hereinabove and that emotional distress was severe as to the Plaintiff and other Class members.

102. That as a direct and proximate cause of the intentional conduct or reckless disregard of the Defendants and each of them, the Plaintiff and other Class members have suffered needless severe emotional distress.

## COUNT VIII

### (Accounting)

103. Plaintiffs restate and reallege the preceding allegations of the Complaint as if fully restated herein.

104. Defendants are in possession of information concerning the Fund and admitted shortfalls in the Fund.

105. The shortfalls in the Fund are due to the negligent reckless and/or intentional misconduct of Defendants as set forth above.

106. Defendants have failed to provide complete, adequate or sufficient information concerning the Fund and Plaintiff and other Class members respective and proportionate interests in the Fund.

107. Defendants have a duty and obligation to account to Plaintiff and other Class members as to their respective and proportionate interests in the Fund as well as any gains and losses in the Fund and information setting forth the causes of same.

108. Plaintiff and other Class members demand an accounting of the Fund to include an accounting that details all income, expenses, investments and other gains and losses from the Fund.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray the Court for the following relief:

1. Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. Trial by jury;

3. An order naming Plaintiff Reverend Charles Jackson as Class Representative and his counsel as Class Counsel;

4. Judgment in favor of Plaintiff and Class members for all damages in such amounts as may be proven at trial, jointly and severally against Defendants;

5. Injunctive relief as appropriate, including but not limited to an accounting;

6. Pre- judgment and post-judgment interest;

7. Plaintiff and Class members' reasonable attorneys' fees, costs, and expenses;

8. An award of punitive and exemplary damages against Defendants; and

9. Any and all further relief, both legal and equitable, that the Court may deem just and proper.

10. Plaintiffs hereby demand a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: March 22, 2022 | Respectfully submitted, |

/s/ *J. Gerard Stranch, IV*
J. Gerard Stranch, IV,(BPR 23045)
Benjamin A. Gastel, (BPR 28699)BRANSTETTER, STRANCH & JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: (615) 254-8801
Fax: (615) 255-5419
gerards@bsjfirm.com
beng@bsjfirm.com

Richard W. Schulte* (OH #0066031)
Stephen D. Behnke* (OH #0072805)
865 South Dixie Drive
Vandalia, Ohio 45377
(937) 435-7500
rschulte@legaldayton.com
sbehnke@legaldayton.com

Joseph A. Osborne, Esq.* (FL #880043)
**Osborne & Francis Law Firm PLLC**
433 Plaza Real, Suite 271
Boca Raton, FL 33432
Tel: (561) 293-2600;
Fax: (561) 923-8100
Email: josborne@realtoughlawyers.com

Attorneys for Plaintiffs

**Pro hac vice* to be applied for